# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

Julie Miller

Plaintiff

v.                                        Civil Case No. 3:18-CV-01136-JCH

CT Northwest YMCA et. al.

Defendants

## 2ND AMENDED CIVIL CLAIM

The Parties to this complaint:

A. Plaintiff

Julie Miller
14 Bradley Street
Plainville, CT 06062
(860)459-7807
Juliemiller0606@gmail.com

B.  Defendant

Defendant No. 1
Northwest CT YMCA
480 Main Street
Winsted, CT 06098

Defendant No. 2
The Gathering Place
21 Prospect Street
Suite A
Torrington, CT 06079

Defendant No. 3
Susan B Anthony Project
179 Water Street #1
Torrington, CT 06790

Defendant No. 4
St. Vincent De Paul
19 Jacobs Street
PO box 1922
Bristol, CT 06010

Defendant No. 5
Prudence Crandall Center for Woman
594 Burritt Street
New Britain, CT 06050

Defendant No. 6
Friendship Service Center of New Britain Co.
85 Arch Street
New Britain, CT 06053

Defendant No. 7
CMHA
270 John Downey Drive
New Britain, Ct 06053

Defendant No. 8
United Way of Connecticut- 211
1344 Silas Deane Highway
Rockyhill, CT 06067

Defendant No. 9
Social Security Administration ODAR
135 High Street
Hartford, CT 06103

Defendant No. 10
Connecticut Family Court Hartford location
90 Washington Street
Hartford, CT 06106

Defendant No. 11
Friends in Service to Humanity of Northwestern Connecticut
332 South Main Street
Torrington, CT 06790

Defendant No. 12
Connecticut Fair Housing Center
60 Popieluszko Court
Hartford, CT 06106
Case#1750202

Defendant No. 13
Western Connecticut Mental Health
95 Thomaston Ave
Waterbury, CT 06702

Defendant No. 14
Journey Home Connecticut
255 Main Street 2nd Floor
Hartford, CT 06106

Defendant No. 15
US Department of Fair Housing and Equal Opportunity HUD
10 Causeway Street
Boston, MA 02222

Defendant No. 16
Mental Health Connecticut
30 Peck Road
Torrington, CT 06790

Defendant No. 17
Connecticut Department of Transportation
CT Paratransit transportation/ADA Bus Services
2800 Berlin Turnpike
PO BOX 317546
Newington, CT 06131-7546

Defendant No. 18
Community Health and Wellness
469 Migeon Ave
Torrington, CT 06790

Defendant No. 19
State of Connecticut
Town of Farmington Connecticut Social Services

1 Monteith Drive
Farmington, CT 06032

Defendant No. 20
State of Connecticut
Farmington Public High School
10 Monteith Drive
Farmington, CT 06032

Defendant No. 21
Chrysalis Center, Inc.
255 Homestead Ave.
PO Box 320613
Hartford, CT 06132

Defendant No. 22
State of Connecticut
Department of Social Services
30 Christian Lane
New Britain, CT 06051-4121

Defendant No. 23
State of Connecticut
City of West Hartford Department of Social Services
50 South Main Street Room 306
West Hartford, CT 06107

Defendant No. 24
State of Connecticut
City of West Hartford Department of Housing
50 South Main Street
West Hartford, CT 06107

Defendant No. 25
Statewide Legal Services of Connecticut
1290 Silas Deane Highway
Wethersfield, CT 06109

Defendant No. 26
State of Connecticut
Department of Children and Family
250 Hamilton Street
Hartford, CT

Defendant No. 27
Connecticut Department of Housing

505 Hudson Street
Hartford, CT 06106

I. Amended Statement Summary of Claims

Social Security Administration ODAR
Individuals acting on behalf of the defendant
Ryan Doyle
Sonia Gonzalez
Amy Corvino
David Pluto
Millicent Fenn
- Four Counts of Negligence

1. The Plaintiff became physically disabled in January of 2014.
2. The Plaintiff applied for Social security benefits.
3. The Social Security administration denied benefits and made a determination without receiving all medical documentation reported to them.
4. The plaintiff filed a second disability claim in 2015.
5. The plaintiff was denied benefits.
6. The plaintiff has appealed the decision.
7. The Plaintiff has a pending Civil Law Suit against the Social Security Administration.
8. In November of 2015 the plaintiff became psychologically disabled.
9. In September of 2017 the plaintiff filed for both full and partial disability in the Torrington, Connecticut office.
10. The plaintiff sent in a corrected information report to correct all information that was incorrectly reported.
11. The Plaintiff received notification from Hartford, CT and continued to provide the information requested.
12. The plaintiff received a denial notice.
13. The plaintiff filed an appeal.
14. The plaintiff received notification of appeal from the Torrington, CT office.
15. October 8th, 2018 I left a voicemail and email for Mr. Doyle asking for a call back so I could update my personal information.

State of Connecticut
Town of Farmington Connecticut
Social Services
Individuals acting on behalf of the defendant
Laurie Mucciacciaro
Amanda Moffo
- Three Counts of Negligence resulting in severe emotional distress
- Three Counts of Negligence resulting in severe physical distress

- Two counts of failure to provide proper support to a disabled individual

16. During the Month of March 2015 I provided all documentation to the defendant to qualify for financial support to assist with the payment of my electricity bill.
17. The defendants were aware that I was an individual with a disability; I was pending a disability claim and resided with my two children.
18. April 20th, 2015 I requested financial support to assist with Rental Payments.
19. On April 20th, 2015 the defendant denied any further assistance.

Statewide Legal Services (use Instagram timeline)
- TWO Counts of failure to provide legal support to a disabled individual
- TWO Counts of failure to provide legal assistance to a low income individual
- TWO counts of negligence resulting on severe emotional distress
- TWO counts of negligence resulting in severe physical damages

20. June 2015 I called statewide legal service to inquire about representation for a custody case.
21. Statewide sent me a package in the mail
22. I filled out the information to request representation
23. I made multiple attempts to contact them.
24. I was told that my request for representation was refused.
25. On September 15, 2017 I received another letter of refusal of representation for a separate legal assistance request.


Connecticut Family Court Hartford location (check court website)
Individuals acting on behalf of the defendant
Judge/Assistant clerk Jess Johnson
Judge/Family Sup. Magistrate M.M. Murphy
Claims against the defendant:
- Three Counts of SEVERE Negligence
- One Count of Negligence resulting in Severe Emotional damages
- One Count of  Negligence resulting in Severe physical damages
- One count of reckless endangerment of a special needs individual
- One count of failure to provide transcript order

26. I received a court summons issued to my married name by Hartford Family Court stating my ex-husband was filing for custody of my children.
27. In 2008 I legally changed my name to Miller.
28. I became paralyzed in fear and trauma.
29. I was also dealing with the homelessness that was about to occur, moving out of her residence into her family's home knowing how unhealthy the situation was going to be.
30. I reached out to numerous agencies for help.
31. All agencies refused to provide any housing assistance.
32. I showed up at the first court date and was met by an intimidating attorney, my ex-husband and his girlfriend who refused to accept that I would not budge on the custody of my children.
33. I was my children's primary care giver and the educational advocate for my children.
34. Most importantly I guided my son thru the special education system.

35. I requested a time extension because it became very clear I needed representation.
36. I contacted statewide legal service and was denied legal representation.
37. I could not fathom going to court and seeing my ex-husband and his attorney.
38. 6/30/15 I sent in a fax to the clerk's office asking for the case to be postponed so I could find legal representation.
39. The court case proceeded without my presence.
40. I received a determination letter stating my daughter was to live with her father and the judge NEVER ENCLOSED THE HOUSING FOR MY SPECIAL NEEDS SON!!!! SHE LEFT TWO SPECIAL NEEDS INDIVIDUALS HOMELESS.  AN 18 YEAR OLD WITH A DOCUMENTED LEARNING DISABILITY.

State of Connecticut
Town of Farmington Connecticut
Farmington Public School
Individuals acting on behalf of the defendant
Kathryn Cartnick
Chris Garrahan
  • Three counts of Negligence resulting in Severe Emotional Distress
  • One count of failure to report abuse by a mandated reporter
41. October 28th, 2015, October 29th, 2015 and October 30th, 2015 I sent an email inquiring about the welfare of my daughter and received no response to two of my requests.
42. October 30th, 2015 I asked for an update on when my daughter was seen by the school psychologist, I inquired about an advocate for her.
43. I never received any documentation about my daughters wellness check.
44. I never received a report from the school psychologist

State of Connecticut
Department of Children and Family
  • One Count of Negligence resulting in severe emotional distress
  • One Count of Negligence resulting in severe physical damages
  • One Count of failure to follow state policy and procedure
45. November 1st, 2015 I called and reported domestic violence since my divorce with my ex-husband.
46. I advised DCF that my children were not communicating with me.
47. I expressed that I had serious concerns for my children's health and safety.

City of West Hartford
Human Services
Individuals acting on behalf of the defendant
Kathy Carfi
Evelyn Lopez
  • Three counts of failure to provide proper assistance to the disabled
  • Two counts of Failure to report abuse of a disabled individual by a mandated reporter
  • Five counts of Negligence resulting in severe emotional distress
  • Five counts of Negligence resulting in severe physical damages
48. November 17th, 2015 I reported psychological abuse to Ms. Lopez
49. November 17th, 2015 Ms. Carfi confirmed that she and Ms. Lopez received the information

50. November 17th, 2015 I requested help with clothing.

51. November 19th, 2015 I followed up

52. November 20th, 2015 I sent another follow up

53. December 5th, 2015 I sent an additional follow up inquiring about clothing needs and advised Ms. Carfi that I was being evicted.

54. December 17th, 2015 I sent an additional follow up with Ms. Carfi advising I was homeless and that I was still waiting to hear back from her about winter clothing.

55. July 23rd, 2018 I sent out an email expressing an emergency eviction situation and inquiring about housing assistance.

56. July 24th, 2018 I sent out an email expressing an emergency eviction situation and inquiring about housing assistance.

City of West Hartford
Housing Authority
Individuals acting on behalf of the defendant
Amy Klvana
• Questionable fraud

57. 2/13/18 I requested all information pertaining to the pre-application I filed for Section 8 housing.

58. 2/14/18 I asked for the preliminary procedure used to determine who gets chosen for the waiting list.

59. 2/15/18 I advised Ms. Klvana that my preferred form of communication was email.

60. 2/15/18 I advised Ms. Klvana that what she had sent me was not in a readable format.

61. 2/15/18 I advised Ms. Klvana for the 2nd time that I prefer to keep my communication in email format.

62. 2/15/18 Ms. Klvana confirmed that my application number 2070438 was not in her system and it wasn't in the system under anyone else's name either.

63. July 23rd, 2018 I sent out an email expressing an emergency eviction situation and inquiring about housing assistance.

64. July 24th, 2018 I sent out an email expressing an emergency eviction situation and inquiring about housing assistance.

65. July 25th, 2018 I sent out an email expressing an emergency eviction situation and inquiring about housing assistance.

Prudence Crandall Center for Woman
Individuals acting on behalf of the defendant
Sarah Barry
Sharon Dube
• One count of failure to provide services to a victim
• One count of Discrimination
• seven counts of negligence

66. In October of 2015 I attempted to get help from the shelter prior to being forced to live in my car and on the streets.  I walked into the shelter and did a face to face intake.

67. October 30th, 2015 I received a confirmation email from the intake coordinator declining my need for help at her location however referring me to Hartford, CT.

68. 4/9/16 the plaintiff reached out to Sarah and Sharon letting them know she was homeless.  She reached out asking for help with clothes, shoes, food and housing.

69. April 15th, 2016 he plaintiff reached out to Sharon and Sarah again after being referred from 211.  She was denied help.

70. July 23, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

71. July 24, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

72. July 25, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

73. July 25th, 2018 the defendant responded that vouchers are only handed out thru CAN and by name.  She was aware that I was being evicted and was homeless since 2015.


CMHA
Individuals acting on behalf of the defendant
Amy Ogle
Karolina Wytrykowska
Liz Dupont-Dielh
Manssour Hanne
  • One count of failure to provide contracted services
  • One count of violations of human rights
  • One count of coercion
  • One count of discrimination
  • One count of negligence resulting in emotional distress
  • One count of negligence resulting in physical damages

74. December 22, 2015 I entered the winter emergency shelter run by CMHA that practiced on a first come first serve basis.

75. December 25th my daughter came to see me.  The shelter staff immediately told me she needed to leave. During my initial entry and the month of December the shelter took all my private information including my housing needs.

76. January 13th, 2016 I had to contact the police because I was being refused entry into the shelter.  The staff advised police that they had received an email from the friendship center stating I had refused the shelter bed offered to me. I asked to see the email and was refused access and a copy of the email.  After the police screamed at me they came to the conclusion that I could stay for the evening but I was not to return after that evening or sleep in my car on the street in front of the shelter.  While in the shelter I experienced and witnessed staff negligence, abuse and bullying.

77. October 10th 2018 I had an in home intake for services provided by the facility.

78. 10/19/2018 I requested an appointment with the housing coordinator to discuss his participation in my housing process.

79. 10/19/18 I left a 2nd message asking for a time to get together.  I also requested the name of my case manager.

80. 10/22/18 I sent a third request for an appointment with Mr. Hanne and advised him about some housing issues I was concerned about.

81. 10/23/18 I sent a 4th request for his help and inquired about my case manager.

82. 10/23/18 I sent a reasonable accommodations request to Mr. Hanne.

83. 10/25/18 I requested the name of Mr. Hanne's Supervisor

84. 10/26/18 I requested the name of Mr. Hanne's Supervisor

85. 10/29/18 I requested the name of Mr. Hanne's Supervisor

<u>Friendship Service Center of New Britain Co.</u>
<u>Individuals acting on behalf of the defendant</u>
Donna Bergin
Lauren Sgro
Jessica Caraballo
- One count of discrimination
- One count of failure to provide contract information
- One count of failure to correct staff abuse of a disabled individual
- One count of failure to report staff abuse of a disabled individual
- One count of Negligence resulting in emotional distress
- One count of Negligence resulting in physical damages
- One count of violations of human rights
- One count of unlawful eviction of a disabled individual
- One Count of eviction prior to the contract stated 30 day

86. January 22, 2016 I became a shelter client at the Friendship Center.
87. I discussed my parental needs and was denied housing to accommodate my needs.
88. January 25, 2016 the plaintiff made a complaint of staff intimidation.
89. February 9th the plaintiff made a complaint of staff intimidation.
90. February 22nd 2016 the plaintiff made a complaint of vandalism of her personal property and again staff intimidation.
91. February 23rd, 2016 I received a letter stating my stay at the shelter was done.
92. August of 2016 211 referred me back to the friendship center.
93. August 4th 2016 I inquired about housing, an advocate and the possibility of having someone come to me for the assessment.
94. The defendant referred the plaintiff to local housing authorities, made no mention of any advocates.
95. August 15th the plaintiff was again referred to the friendship center and reached out inquiring about any voucher programs or section 8 programs.
96. She received an out of office response.
97. September 1st 2016 the plaintiff sent a follow up email inquiring about help with housing.
98. July 23, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.
99. July 24, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.
100. July 25, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

<u>St. Vincent De Paul</u>
<u>Individuals acting on behalf of the defendant</u>
April Bowman
Jane Doe
- One count of Negligence
- One count of Severe Emotional Distress
- One count of discrimination

101. 10/12/2016 the plaintiff had an intake at the defendants' shelter.
102. 10/17/2016 the defendant could not provide a time frame for a bed at the shelter and referred her name to her coordinator.

103. 10/31/2016 the plaintiff reached out because the coordinator had not called her.

104. 11/7/2016 the plaintiff inquired about the coordinators number.

105. July 23, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

106. July 24, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

107. July 25, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.


The Gathering Place

Individuals acting on behalf of the defendant

Nancy Cannavo

- One count of failure to provide proper services to a disabled individual
- One count of Negligence resulting in severe emotional distress

108. I started inquiring about housing assistance with the defendant in December of 2016.

109. The defendant was aware that I had been homeless since 2015 and I was living in a place not habitable for humans.

110. I was using the Gathering Place Facilities to shower on a regular basis.

111. I provided all documents needed for housing assistance, including the requested COC disability Verification Form.

112. 4/3/2017 I notified Ms. Cannavo of a eviction.

113. 4/11/2017 I met with the screening committee

114. 5/12/2017 I was evicted and was left with no choice but to live in her car for 2 weeks.

115. 5/15/2017 I stopped into the Gathering Place for an additional intake.  I advised Ms. Cannavo that I was in need of independent housing.

116. Ms. Cannavo scheduled an additional housing meeting for 5/16/17.  I advised her that I would be recording the meeting.

117. 5/16/17 I was refused the right to record the meeting.

118. 4/13/18 I had another intake at the Gathering Place

119. On July 23, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

120. On July 24, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

121. On July 25, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.


Susan B Anthony Project

Individuals acting on behalf of the defendant

Michelle Marone

- Three Counts of Negligence

122. The defendant was aware that I had 3 active protective orders against an individual, I had used their services on multiple occasions.

123. 5/5/2017 I had an intake with the shelter

124. 5/19/17 I called to inquire about a shelter bed.

125. On July 23, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

126. On July 24, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

127. On July 25, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

Friends in Service to Humanity of Northwestern Connecticut
  • One count of failure to provide ADA accommodations
  • One count of negligence resulting in extreme emotional distress
  • One count of Coercion

 Individuals acting on behalf of the defendant

John Doe

129. May 14, 2017 the plaintiff had an intake at the shelter.   At the intake appointment I was told they don't allow pets.  I advised John Doe that it was an emotional support animal, not a pet.  I asked him if he wanted to call Nancy Cannavo and confirm that he could not accept an emotional support animal.  I left.

130. I received a phone call from Nancy the same day she asked if I refused a bed at the shelter.

131. I told her I was never offered a bed at the shelter.

132. She said she was told I was offered a bed with the option of leaving my ESA in my car.

133. I told her that offer was never made to me and even if it was I would not accept it.

134. I was homeless from 5/12/2017 until 5/25/2017.

135. The lie provided by the John Doe about my refusal to accept a bed sounded just like the coercion used to get me to accept the shelter bed at the friendship center.

Connecticut Fair Housing Center
 Individuals acting on behalf of the defendant

Pamela Heller
  • Failure to accept any representation for human rights violations and claims.
  • Failure to follow thru with contractual agreement
  • Discrimination

136. The plaintiff required the help of the defendant in May of 2017 when her continuous attempts for independent housing were ignored and she was living in her car again.

137. Ms. Heller was CC'd in numerous emails in which the plaintiff was reporting discrimination, harassment and negligence.

138. Ms. Heller failed to act upon them and stated that she no longer needed to be included in the emails.

139. Ms. Heller never called to conference the plaintiff in on the case hearing.

140. Ms. Heller started to badger me for information in regards to the advocate I was working with and when I refused to provide her with the information she removed herself from my representation.

141. In June of 2018 the defendant removed herself from the case.

142. Prior to removal the plaintiff was advised that the CHRO would not be taking any additional complaints from me.

United Way of Connecticut 211
  • Severe Negligence
  • Emotional Distress

143. The plaintiff started contacting 211 beginning in 2015 up until 2018 for support with housing, distress and crisis because she was homeless and living in her car on multiple occasions.

144. A majority of the telephone support lines state and national are not functional and of no help.

145. The defendant called multiple times in distress and crisis.

146. She was only directed to individuals who could not provide any immediate support.

YMCA Emergency Shelter
 Individuals acting on behalf of the defendant

Bruce Mochan

Greg Brisco

William Donahue

Trisha Whiterock

John Burnham

- Failure to provide safe housing resulting in sexual assault
- failure to provide sanitary housing
- Severe negligence resulting in extreme emotional distress
- unlawful eviction of a disabled individual
- failure to provide reasonable accommodations
- failure to provide contracted services
- failure to follow State Agency Regulations
- coercion
- failure to provide chemical notice use
- failure to provide MSD chemical data information sheets

147. 5/26/17- completed an application for residential housing specifically requesting single occupancy.   (Violation of Conn. Agency Regs. 17b-198-4(a) )

148. 6/10/17- I made a 2nd request for a key to lock the shelter room and reported sanitary issues.

149. 6/16/17- expressed the need for independent access into the shelter.

150. 7/15/17- I reported issues with the front door and being able to get into the shelter. (violation of Conn. Agency Regs. 17b-198-4(a) )

151. 8/27/17- I sent a follow up email inquiring about single occupancy unit.

152. 10/13/17- I reported a roommate having toxic phone conversations in the shelter room.

153. 10/29/17- I reported that my roommate brought a kitten into the room for the evening.

154. 10/31/17- I requested to stay anonymous about complaints I was making.

155. 11/5/17- I received notice that "they" preferred not to communicate with clients or residents by email.

156. 11/6/17- I asked who "they" were and let him know I was most comfortable communicating via email.

157. 11/10/17- I provided medical documentation about my condition to the coordinator stressing the importance of internet use at the facility.

158. 11/10/17 I discussed that this was causing a serious issue for me.   I needed internet service to finish up some important things.  I couldn't be carrying everything to the library.

159. 11/10/17- I expressed some concerns I had about staff not following thru with previous verbal situations.

160. 11/10/17- I expressed that I was continuously told I was next for single occupancy unit however 3 people have gone into those rooms.

161. 11/10/17- I reported a lack of personal space and belongings

162. 11/10/17- I reported the uncleanliness of the room I also sent pictures

163. 11/16/17- I inquired about a housing voucher and asked if two individuals could help me with the information.

164. 11/17/17- I advised that the roommate issue was getting worse.

165. 11/17/17- I requested a walk thru of the room.

166. 11/25/17- I requested the paperwork for the Sec 8 residency.

167. 12/7/17- I addressed a letter left on my door telling me not to do yoga in the hallway and not to play with my emotional support animal in the hallway.

168. 12/7/17-I asked from an alternative area large enough to exercise him.

169. 12/7/17-I touched base on the health issues of the shelter room sending current pictures

170. 12/14/17- I advised that I would no longer be able to pay rent to the shelter.

171. 12/14/17- I advised I would not be able to do chores due to increased pain.

172. 12/14/17- I advised that I was locked out of the shelter.

173. 12/14/17- I advised that I thought I smelt marijuana in the shelter.

174. 12/15/17- I inquired about the reasonable accommodation of spending time with my children to include evenings

175. 12/19/17- I advised that the SRO voucher would not be appropriate for me.  They do not allow my children to spend time with me.

176. 1/18/17- I advised that I would not be able to do chores, someone was slamming doors.

177. 1/23/18- I requested communication with the new housing coordinator to remain in email.

178. 1/23/18- I advised that the roommate situation the coordinator was suggesting was not a healthy choice. I discussed all issues we had.

179. 1/23/18- I discussed my disabilities with the coordinator.  That included both physical and mental.

180. 1/23/18- I discussed my concern with the health hazards of the laundry facility.

181. 1/23/18- I inquired about the internet access

182. 1/24/18- I came back to a roommate in my shelter room with no notification

183. 1/30/18- I advised of verbal abuse

184. 1/30/18- I asked about the discriminate behavior of the facilities pool.

185. 1/31/18- I advised about the carelessness of my roommate.  I discussed that an individual on the 3rd floor had keys to my room.

186. 1/31/18- I discussed a horrible enmeshment issue at the facility.

187. 1/31/18- I notified the coordinator that I was concerned for my safety.

188. 2/3/18- I reported smoke in the shelter.

189. 2/3/18- I inquired about when the shelter had been cleaned.

190. 2/7/18- I inquired about financial assistance for some personal needs

191. 2/7/18- I requested use to a safe for my personal items

192. 2/7/18- I inquired if anyone besides staff had access to keys to my room.

193. 2/11/18 I reported issues with the laundry room

194. 2/11/18- I reported issues with the bathroom

195. 2/14/18- I reported a strange smell in the shelter.

196. 2/18/18- I reported psychological abuse and emotional distress

197. 2/19/18- I advised I would not be able to do chores

198. 2/23/18- I reported harassment of the coordinator in the refusal to respect my reasonable accommodations request.

199. 2/24/18- I provided the coordinator with my COC verification and advised that the shelter was not a suitable living situation for me.

200. 2/28/18- I revoked any signed releases with the facility

201. 3/1/18- I inquired about the details of the parasitic out break on the client's side of the facility.

202. 3/4/18- I reported drug use in the shelter

203. 3/5/18- I inquired for a 2nd time about the parasitic infestation

204. 3/5/18- I reported I had new bites on me

205. 3/8/18-I inquired for the 3rd time about the infestation at the shelter

206. 3/8/18- I reported that some of my HMIS information was incorrect.

207. 3/8/18- I advised the coordinator that I had 3 active protective orders

208. 3/16/18- I reported a toxic small coming from the room next to mine.  I asked to confirm it was not harmful to me or my ESA.

209. 3/19/18- I reported aggressive behavior

210. 3/20/18- I reported Domestic Violence in the shelter

211. 3/20/18- I reported aggressive behavior towards me

212. 3/28/18- I reported additional bites

213. 3/29/18- I reported additional bug bites. I inquired about how this would be handled.

214. 3/29/18- I received a notice of rules violation.  I told the coordinator to provide the evidence and he never did.  I told him his violation was not legit.

215. 3/30/18- I received an additional violation. I corrected the coordinator and told him to stop harassing me.

216. 3/30/18- I provided the facility with an amendment to the bed bug policy they had me sign.  I asked for staff help with one of the piece of equipment.

217. 4/2/18- I requested the appropriate size refrigerator be put in the room.

218. 4/6/18- I received an eviction letter.

219. 4/12/18- I advised I had an autoimmune disease

220. 4/13/18- I advised I would need an extension on the eviction

221. 4/23/18- I reported that I didn't have the new housing coordinators email address

222. 4/23/18- I reported that I didn't have any information from my recent intake appointment

223. 4/24/18- I reported I didn't have a phone

224. 5/2/18- I provided medical documentation for the use of the AC

225. 5/8/18- I reported that I could not get my roommate to stop asking to sleep in my bed with me.  I reported continuous manipulation.  I asked for resolution.

226. 5/11/18- I reported being in an unsafe situation

227. 5/13/18- I had to call the police; I filed a sexual assault claim

228. 5/14/18- My vehicle was towed and impounded from the shelter parking lot

229. 5/14/18- I reported that the police had to get involved

230. 5/15/18- I reported that I was unable to make contact with the housing coordinators to discuss a voucher that was being offered.

231. 5/16/18- The facility lost power.  I reported that there was no generator, that there were no emergency lighting and no telephone.

232. 5/16/18- I reported profanity and drug usage talk on the telephone in the shelter room.

233. 5/17/18 I requested help from the coordinators to obtain a state phone

234. 5/23/18- I reported that upon the eviction of my roommate the room was left looking vandalized and what looked like bodily fluid smeared all over the wall of the top bunk.

235. 5/23/18- I requested documentation of my room being bug free

236. 5/31/18- I reported that I had an accommodations letter for the internet.  I advised I would not be able to pay any AC fees as I was already washing clothes in the bathtub and requesting money for wash.

237. 5/31/18- I provided my unearned income information to the coordinator at her request.

238. 5/31/18- I asked if the shelter was receiving any money on my behalf.  I advised the coordinator about my illnesses, my alternative form of communication request and the request to not put a roommate back in my room.

239. 6/1/18- after being told numerous times that I was going to get a new roommate I provided the coordinator with a copy of Conn. agency Regulations stating that I was to remain a single room.

240. 6/8/18- I asked the coordinator to confirm that the floors they intended to strip and wax were not Asbestos containing floor tiles.

241. 6/16/18- I reported that I was locked out of the shelter

242. 6/20/18 I asked for a copy of the fire code requirements after being asked to rearrange my room due to fire safety issues

243. 7/28/18 I reported a verbally aggressive incident

244. 7/30/18 I reported issues with my new roommate

245. 8/2/18 A new sign was posted about curfew hours.  I advised the new coordinator that I had previously had issues with the curfew and wanted to be sure I would not be locked out.

246. 8/3/18 I requested that the appropriate size refrigerator be placed in the shelter room. I reported the hostility around the issue.

247. 8/4/18- I requested a single room

248. 8/8/18- I reported harassment

249. 8/9/18 I reported harassment

250. 8/13/18- I expressed how distasteful it was to not receive help.  I expressed the emotional distress I was in.  I advised I was having sleeping issues. I told her it was distasteful to refuse me the use of the empty room.

251. 8/15/18- I requested a copy of the fire marshals report from the visit, confirming that the room layout was not a fire hazard.

252. 8/15/18- I requested copies of the chemical data sheets for the products being used in the facility.

253. 8/16/18- I reported that shelter clients were leaving personal belongings in the shared bathroom.  That it has happened at least 3 times that week.  I reported that I was leaving the belongings on the floor outside the bathroom.

254. 8/16/18- I requested the chemical data sheets again.  I reported work being done in one of the rooms.

255. 8/16/18- I asked for the chemical information for the bug sheets being left thru out the shelter. I advised I would like to talk with the health department if they had a scheduled time to have them come out.

256. 8/22/18- I reported physical signs of illness.  I reported that my roommate was ignoring my requests and leaving her personal belongings in the bathroom.  I reported that my roommates behavior was having an impact on my health.  I reported harassment.  I had to call the police because of a verbal altercation.

257. 8/27/18- I reported and requested help with food for the month.

258. 8/27/18- I requested the staff to stop harassing me

259. 9/1/18- I requested a copy of the Orkin service contract. I reminded the coordinator that she had some unanswered questions and information to provide me

260. 9/6/18- I reported my concern about the continuous use of toxic chemicals in the shelter with no ventilation.  I advised that the chemical they have listed on the resident disclosure is extremely toxic to humans and animals.

261. 9/7/18- I requested copies of my records on file.

262. 9/7/18- I advised that I would need help removing my AC from the window and would need access to the mover's dolly and elevator on the day of my eviction.

263. 9/11/18- I asked if they had any knowledge of lead or radon in the building and I asked for a copy of the service contract for the ventilation system.

264. 9/11/18 I advised the coordinator that access to the mover's dolly and elevator was not an option that my previous email was giving prior notice of my use.

265. 9/12/18 I reported that I was emotionally distressed because I was being evicted without any place of residence to go to.  I asked for help with transportation.

266. 10/11/18 I advised that I was trying to change my mailing address

267. 10/17/18 I advised that I would not make it in to pick up mail

Mental Health Connecticut
Individuals acting on behalf of the defendant
Gabrielle Padilla
Jessica Remmey
   • One count of negligence resulting in severe emotional distress

268. In December of 2017 Ms. Padilla was introduced to me thru email.

269. December 19, 2017 Gabrielle advised me that she would be pulling my file from the Gathering Place and that someone would be in touch with me.

270. December 20th 2017 Gabrielle confirmed that she received my personal file.

271. September of 2018 Ms. Padilla contacted me by telephone to provide taxi phone numbers for a voucher approved transportation ride upon my eviction.

272. When the plaintiff called the taxi service she was denied transportation and notified the defendant of her negligent actions on 9/16/18.

273. Ms. Remmy was introduced to the plaintiff thru Ms. Padilla to update my file and help provide support in the chronic homeless status.

274. The plaintiff provided the defendant with all documents she requested.

275. She advised that defendant that her questions were re-traumatizing her.  The whole point of providing the information in written form was so that I wouldn't continue to be re-traumatized.

Journey Home Connecticut
Individuals acting on behalf of the defendant
Amanda Gordon
Leana Ruiz
   • One Count of Negligence
   • One count of Discrimination

276. Feb 22nd, 2018 a pre-application for section 8 voucher was faxed.  The agency was made aware of my mental health issues as well as my disability.

277. March 1st, 2018  I was told I didn't qualify for a voucher because my information was not in the Greater Hartford CAN system.

278. In March of 2018 Ms. Ruiz sent a denial letter for the HCV.   She stated I was denied housing because I had not sent the completed information and my geographical area was not serviced by her agency.  I provided all the information she requested and was discriminated against because of my location.

279.  July 23, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

280. July 24, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.

281. July 25, 2018 the plaintiff sent out an email inquiring about any vouchers that she was pending an eviction and it was an emergency situation.


State of Connecticut
Department of Housing
Individuals acting on behalf of the defendant
Steve Dilella

- Failure to follow thru with complaint

282. The Plaintiff began contacting the defendant in Dec of 2017 after being stuck at an emergency shelter for 7 months with no housing relief.

283. She made complaints of discrimination, sanitation and safety to the defendant.

284. She also inquired about the funding of the facility requesting the financial records for the shelter.


Western Connecticut Mental Health
Individuals acting on behalf of the defendant
Cynthia Mcknickles
Traci Douglas

- One Count of Negligence causing sever emotional distress
- One count of failure to follow thru with contract

285. 5/22/18- I advised the defendant that I didn't have a telephone

286. 5/25/18- I inquired about who advised the defendants not to communicate thru email.

287. 5/30/18- I requested an extension of time, I asked for a referral to an advocate

288. 5/31/18- I filed a grievance

289. 7/6/18- I disagreed with the grievance decision and requested an executive official decision.


US Department of Housing and Urban Development (HUD)
Individuals acting on behalf of the defendant
Kristin Filipic

- One Count of Negligence causing emotional distress

290. On or around May 31st, 2017 the plaintiff filed a housing complaint with the US Department of Housing and Urban Development.

291.  June 29th, 2017 Ms. Filipic responded to the complaint stating she was reviewing it. She was aware that I am an individual with disabilities.

292. June 29th, 2017 the plaintiff responded with times she was available to discuss the claim.

293. July 5th, 2017 the defendant and plaintiff had a telephone conversation however I don't remember what was discussed.

294. Prior to the telephone conversation the defendant placed a call to my minor daughter leaving a voicemail.

295. July 6th, 2017 I confirmed our conversation and expressed my extreme importance of not contacting my minor child.  Ms. Filipic outlined the process for filing my complaint.

296. July 7th, 2017 I inquired about which court to file a claim with and how to obtain an advocate.  Ms. Filipic never provided advocate information.

Chrysalis Center, Inc.
Individuals acting on behalf of the defendant
Edith Torres
Amber Freeman
Letticia Brown-Gambino
Melissa Germano
Lynda Waldron
- One count of negligence resulting in severe emotional distress
- One count of discrimination
- One count of failure to meet accommodational needs
- One count of failure to file a formal grievance

297. July 27th, 2018 I had communications with Melissa Germano about communicating thru email and setting up times to view apartments.  She advised that email communication was also her preferred form of communication.  She advised me that it would be best to allow her to schedule the viewings.  I could email her the apartments I had interest in.

298. July 27th, 2018 I emailed an apartment I was interested in seeing.  I emailed a list of accommodations I would need in an apartment as well as advised her that a time extension was most likely going to need to be requested and advised her of the areas I was looking in.

299. July 30th, 2018 I received a response to my accommodations list and was told I had 2 weeks to find a basic unit.  I responded with my definite needs in a unit and inquired about what additional information would be needed to support my accommodations.  I emailed an apartment I was interested in.

300. July 31st, 2018 I received an email about an apartment.  I advised Melissa of my eviction date and told her I would work on getting the accommodations letters that had been requested.  Melissa advised that the letters needed to be from a licensed doctor.  Melissa advised me that she had forwarded my letter to her supervisor and my request had been denied.

301. August 1st, 2018 I met with the defendants Melissa Germano.  I signed a voucher and stated that I was signing in dispute because I was working on getting the documented letters from my medical providers.

302. August 3rd, 2018 Melissa sent an email stating her supervisor told her to change her preferred communication to telephone or person because of privacy issues.   I responded telling her I would not include any personal information in my emails.

303. August 9th, 2018 Melissa emailed letting me know that because I signed the voucher in protest that it appeared I was not accepting the voucher.  She advised that her management

decided to put my voucher back into the CAN system and she cancelled our appointment for August 10th.

304. I responded to the 3 defendants letting them know that I believe they were missing a huge amount of medical and psychological information in regards to my disabilities.  I agreed to accept 1 bedroom with the understanding that all accommodations letter would be following.

305. 8/15/18 I received a voicemail from the defendant that I erased.  I emailed her to inquire about what the message said.

306. An appointment was scheduled for 8/27/18 to view an apartment and go over the voucher information.

307.  8/27/18 I met with 3 of the defendants to discuss voucher questions at which time they advised that I should reconsider some of my accommodation requests.    I viewed 1 apartment in which I told Melissa the basement was a HUGE health risk however I would make do with it because I was anxious to get out of the shelter and be sure I am not on the street on the date of my eviction.

308. I sent an application to the landlord.

309. I sent an email in regards to my mental health recovery and my participation in the process as is stated in there company brochure.  I asked for the chief Program Officers Supervisor contact information.

310. I was told my voucher was put back into the CAN system and that it was evident they would not be able to help me.

310. 8/31/18 I sent a formal grievance

311. 9/12/18 I requested copies of all the letters they have received in regards to accommodational needs that did not come directly from me.   I had asked my doctors to send them directly to them.  I wanted copies.

312. I never received any paperwork for the formal grievance filed

Connecticut Department of Transportation
CT Paratransit transportation/ADA Bus Services
Individuals acting on behalf of the defendant
Margret Pieniazek
Heather Davis
Pat Williams
Enid Rodriguez
Miguel Lefebre
- One count of discrimination
- Two counts of negligence resulting in physical pain
- six counts of negligence resulting in extreme emotional distress
- one count of failure to meet contract dates

313. 10/2/18 I had an interview with the defendant

314. 10/21/18 I inquired about why my application was taking so long.  Had they not called my previous ADA transportation company? I let them know I was/am in urgent need of transportation.

315. 10/21/18 I inquired about the discrimination issue that some districts were provided complimentary ADA transportation and others were required to pay.

316. 10/22/18 I sent in a request for complimentary ADA transportation for a trip to get food the following day.

317. 10/22/18 I sent in an additional request for transportation
318. 10/23/18 I sent another request inquiring about my application and the urgency of the situation.
319. 10/25/18 I sent another request stating the urgency of transportation
320. 10/26/18 I sent another request stating the urgency of transportation
321. 10/21/18 I sent another request stating the urgency of transportation.

State of Connecticut
Department of Social Services
  • discrimination
  • failure to accept accommodations request
  • harassment

322. 10/24/18 I called the benefits center to complete my telephone interview for SAGA Cash.  I had sent in my medical form, both my primary and my physiatrist filled out and faxed my medical forms. I spoke with Nancy. I told her I am homeless and in a temporary living arrangement.  She said I have been denied benefits.  I asked if she received the medical packet from my psychiatrist and she said that has nothing to do with the benefits renewal.  I asked why my services were denied and she said the doctor's medical form was not filled out properly.
323. I left a voicemail with DSS
324. 10/25/18 I sent a reasonable accommodation request (requesting email communication) to 3 different departments within the DSS.  I advised them that my benefits were due for renewal on 10/30/18, I was homeless, I have multiple disabilities and I depended on this small amount of money to support myself and my emotional support animal.  I requested the contact information to my case manager.  I advised that if they needed additional documentation from me they would need to provide me with the documents in a PDF format.
325. 10/26/18 I left a message noting I had received a phone call from Shelby and she could not provide a direct phone number to return her call.  She confirmed she is not my case manager and she works in the escalations department.  I requested that my accommodations request get sent to the appropriate department.
326. 10/29/18 I reached out to 3 departments within the DSS. I followed up with the accommodations request I sent in on the 25th that I had not received any confirmation of receiving.  I reported fraudulent internet activity on my DSS web account.  I pointed out multiple flaws within the DSS paper processing.  I advised that I had disability verification dated 2016 and would be happy to provide it to them if they wanted to email me thru a secure network.  If they required updated paperwork they would need to provide the paperwork to me.  I advised I was in need of emergency food assistance, emergency cash assistance and an immediate case manager who could come to my home.  I advised that I felt discriminated against for needing and requesting help.
327. 10/30/18- I received a telephone voicemail from Holly.  I changed my telephone voicemail greeting to include my email address and advised to leave emails rather than voicemails as I would not be responding to voicemails.

Community Health and Wellness
Defendants Acting on behalf of the defendant
  • One count of Negligence
  • One count of failure to abide by the paper reduction act

- One count of failure to abide by HIPPA regulations pertaining to secure communications and requests made thru a secure network.
- Two counts of severe emotional distress

328.  8/14/18 I requested the dentist provide me with a TMJ appliance due to pain.  I made a phone call follow up and have not heard from the office in regards to the insurance approval of the appliance,

329. 10/19/18 I securely requested that my dental records be forwarded to my new dental provider.  I received a phone call from a desk clerk named Shawna stating I needed to send them a paper copy of the request.

330.  10/19/18 I sent a 2nd request for my medical records to be forwarded to my new dentist thru the secure medical portal.  I received a 2nd voicemail stating I needed to send in a paper copy of the request.

II. Basis for Jurisdiction Plaintiff invokes the jurisdiction of this Court Pursuant to:

28 U.S.C. § 1332 (a) (1) Diversity of Citizenship; Amount in Controversy; Costs

42 U.S.C § 3604 (f) (2) Discrimination in the sale or rental of housing and other prohibited practices

42 U.S.C. § 3604 (f)(3)(A)

42 U.S.C. § 3604 (f)(3) (B)

III. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court GRANT judgement as follows:

General damages for mental and emotional suffering caused by the defendant's misconduct and negligence.

Punitive damages based on defendant are willful, malicious, intentional and deliberate acts.

Special damages to include payment for all mental and physical medical claims pertaining to the said actions.

Trial by jury for all issues if necessary.

Reasonable attorney fees and expenses should it become necessary.

Reasonable forensic psychology fees and expenses should it become necessary.

Prejudgment interest at the rate allowed by law.

The sealing of all evictions cases that occurred after I became disabled.

Declaratory relief for the violations of Plaintiffs statutory rights.

**UNITED STATES DEPARTMENT OF EDUCATION change in policy to create a mandatory 1/2 year high school exiting class for anyone who utilizes special services or the special education system.  The class will be designed to teach young adults the following:**

- **How to navigate through their lives and be successful using accommodational requests.**

- **How to use accommodations requests in secondary schools as well as employment.**

- **The accommodations process.**

- **Where to go for advocacy, support and online templates.**

- **Where and when to request accommodations.**

- **It will teach them about the ADA laws put into effect to protect them.**

- **It will teach them the basic navigation thru the US district court claims process pro se should the need arise.  .**

**UNITED STATES FAMILY COURT change in policy to prevent negligent custody changes and the severe psychological damages that are caused by such negligent actions.**  All custody cases have a mandatory 6 month process which includes a full investigation of both parties and their roles with the children.  The only time this is unacceptable is if a parent and children are in a dangerous situation.

**UNITED STATES FAIR HOUSING change in policy to prevent the system from contributing to the psychological abuse of parental alienation.**
- Shelters need to be held responsible and required to provide proper housing for non-custodial parents during child/parent visitation.  Discrimination is not acceptable, period.
- Mandatory video and voice recording in all public areas of shelters.  Not to include sleeping areas and bathrooms.
- Mandatory yearly or bi-yearly financial audits of state and federal funded shelters.
- Mandatory unannounced inspections of state and federal funded shelters.

IV.   CERTIFICATION AND CLOSING

Under Federal rule of civil procedure 11, by signing below,  I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of rule 11.

FOR PARTIES WITHOUT AN ATTORNEY

I agree to provide the clerk's office with any changes to my address where any case- related papers may be served. I understand that my failure to keep my current address on file with the clerk's office may result in the dismissal of my case.

Date of signing

10/31/18

Signature of Plaintiff

Julie Miller

Printed name of Plaintiff